1

d'attaray law | law office of mainak d'attaray
Mainak D'Attaray (Bar No. 283999)

2  111 West Ocean Boulevard, Suite 400
Long Beach, California 90802

3  Telephone: (424) 703-5294
Facsimile: (855) 706-5294

4  Email: mdattaray@dattaraylaw.com
*Attorneys for Plaintiffs Gustavo Escamilla and*

5  *Greenway Nutrients*

6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE CENTRAL DISTRICT OF CALIFORNIA

8

9

10  GUSTAVO ESCAMILLA, an individual; and GREENWAY

11  NUTRIENTS, a Colorado corporation,

12                          Plaintiffs,

13          v.

14  DEPARTMENT OF HOMELAND SECURITY; THE UNITED STATES

15  OF AMERICA; and DOES 1 through 50, inclusive,

16                          Defendants.

17

18

Case No.:

**COMPLAINT FOR:**
1) **42 U.S.C § 1983 VIOLATIONS OF CIVIL RIGHTS;**
2) **42 U.S.C. § 1983 VIOLATIONS OF DUE PROCESS;**
3) **42 U.S.C. § 1983 VIOLATIONS OF EQUAL PROTECTION;**
4) **CAL. CIV. CODE § 52.1 VIOLATION OF BANE ACT;**
5) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**
6) **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; AND**
7) **DECLARATORY AND INJUNCTIVE RELIEF**

19  / / /

20  / / /

21  / / /

22

23

24

25

26

27

28

COMPLAINT

Plaintiffs Gustavo Escamilla ("Escamilla") and Greenway Nutrients ("Greenway") (collectively, "Plaintiffs") hereby complain on information and belief.

## INTRODUCTORY STATEMENT

1.     The above-entitled action is brought under 42 U.S.C. section 1983, and California Civil Code section 52.1, on the grounds that defendants, among other things, violated Plaintiffs' federal and state constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, sections 3, 4, 7, 13 and 15 of the California Constitution.

## JURISDICTION AND VENUE

2.     This case arises under the United States Constitution and the laws of the United States. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552a and 28 U.S.C. §§ 1331, 1343, and 1361. Venue is proper in this district, pursuant to 28 U.S.C. § 139l(e), because defendants' officers and employees committed the acts and conduct complained of in this judicial district.

## PARTIES

3.     Plaintiff Escamilla is an individual, citizen of the United States, the owner of Greenway, and a resident of Burbank, California.

4.     Plaintiff Greenway is a Colorado corporation, with its principal place of business in California.

5.     Defendant Department of Homeland Security ("DHS"), is a department of the United States of America, created on October 8, 2001, to develop and coordinate the implementation of a comprehensive national strategy to secure the nation's borders from foreign criminal acts or terrorists threats stemming from unlawful activities used to finance these unlawful activities that include theft of intellectual property.  DHS' Office of Professional Responsibility ("OPR") was created to uphold DHS' standards for integrity and professionalism. As a key part of that responsibility, OPR investigates allegations of misconduct involving

1

COMPLAINT

employees of DHS and U.S. Customs and Border Protection ("CBP"). The DHS Office of Rights and Civil Liberties ("CRCL") supports DHS' mission to secure the nation while preserving individual liberty, fairness, and equality under the law. CRCL integrates civil rights and civil liberties into all of the Department activities. CRCL is responsible for investigating and resolving civil rights and civil liberties complaints filed by the public regarding DHS policies or activities, or actions taken by Department personnel.

6.     Defendant United States of America is sued under the Federal Tort Claims Act on behalf of DHS employee and officer Shawn Gibson ("Gibson"), a current Operations Manager with DHS for his acts in his official capacity.

7.     Defendant United States of America is sued under the Federal Tort Claims Act on behalf of DHS employee and officer Russell Simons ("Simons"), the Resident Agent In Charge with DHS' Office of Professional Responsibility for his acts in his official capacity.

## GENERAL ALLEGATIONS

8.     Prior to Escamilla or Greenway meeting with DHS law enforcement officials  in March 2013, Plaintiffs had previously followed all of the proper federal law enforcement reporting protocols in order to be able to file a formal criminal trademark infringement, wire fraud, as well as money laundering complaint against the a group of accused suspects that have sold millions of dollars' worth of the counterfeit, fake, or unauthorized versions of Plaintiffs products bearing Plaintiffs US trademark with the Los Angeles field office of the United States Federal Bureau of Investigation (FBI).

9.     Shortly thereafter, Escamilla and Greenway were first misled and taken advantage of by FBI officials who, despite the FBI's own intellectual property rights criminal complaint process reporting protocols, informed plaintiff Escamilla that the FBI does not maintain jurisdiction over federal criminal trademark infringement matters, that the local U.S. Attorney's office only considers

2

1  prosecuting criminal trademark infringement matters in excess of two  million

2  ($2,000,000.00) dollars, and that Greenway's criminal trademark infringement

3  complaint was simply just not big enough.  Evidence of this is attached hereto at

4  **Exhibit "1."**

5      10.    On or about August of 2014, after feeling taken advantage of,

6  completely let down, deceived, as well as totally misled by the federal law

7  enforcement officials with the FBI, and in a effort to also warn other companies

8  who have also been victimized by these same accused suspects unlawful conduct,

9  Plaintiffs also reported the alleged suspects illegal activities directly to Adobe

10  Systems (Adobe) who later initiated a federal civil action against the same accused

11  suspects for willful trademark infringement, counterfeiting, as well as numerous

12  other unlawful acts in Florida Southern District Court.

13      11.    During Adobe' civil trial against the same accused suspects and while

14  utilizing the very same eyewitnesses, evidence, as well as information that Plaintiffs

15  had also previously provided to federal law enforcement officials with the FBI, and

16  later Defendants Gibson, and DHS, Adobe was able to immediately acquire a

17  decisive federal preliminary and later permanent federal injunction against the same

18  accused suspects in Greenway' criminal complaint, which is attached hereto at

19  **Exhibit "2."**

20      12.    Selakovic who is in fact, the actual mastermind and ringleader behind

21  this massive criminal enterprise was immediately found to be personally and

22  directly responsible for the unlawful manufacturing, distribution, and sales of over

23  one billion ($1,000,000,000) dollars of counterfeit, fake, or unauthorized versions

24  of Adobe' brand software products while being finally compelled to personally

25  admit to all of the aforementioned unlawful activities and reaching an eight figure -

26  multi-million dollar confidential settlement agreement with Adobe in order to settle

27  Adobe' claims against the same mastermind and ringleader personally.

28

3

COMPLAINT

13. Later, in or about March 2015, Escamilla and Greenway were first contacted by federal law enforcement officials with the defendant DHS who were referred by Adobe as well as Microsoft in order to inform plaintiffs Escamilla and Greenway that defendant DHS was conducting on ongoing federal criminal investigation into the accused suspects ongoing and unlawful manufacturing, distribution, and sales of several billion dollars of counterfeit, fake, or unauthorized versions of Adobe Systems (Adobe), The Microsoft Corporation'(Microsoft), as well as plaintiff Greenway' brand name products bearing each of the aforementioned companies valid US trademark by the alleged mastermind and ringleader behind a multi-billion dollar international counterfeit goods and theft ring that was suspected of continuing to direct those unlawful activities from Singapore and unlawfully infiltrating United States border; evidence of which is attached hereto at **Exhibit "3."**

14. On or about March 3, 2015, Greenway, Escamilla, and another one of Greenway' senior managers met with defendant DHS Operations manager Gibson, Special Agent Carlos Suarez, who is not a party to this action, as well as Special Agent Scott D. Titus, who is also not a party to this action, in person in Burbank, California.

15. It was at that time that Greenway then also filed a formal trademark infringement, wire fraud, as well as theft of trade secrets criminal complaint against the accused suspects in Greenway' case with defendant DHS, Defendant Gibson, with DHS Special agents Suarez and Titus both present.

16. Pursuant to defendant DHS criminal complaint reporting protocols, Gibson audio recorded the entire meeting.

17. It was at that time that Defendant Gibson explained to plaintiffs Greenway and Escamilla that defendant DHS was already eighteen months (18) into an ongoing federal criminal trademark infringement, tax evasion, as well as money laundering criminal investigation entitled "Operation Software Slashers"

4

that was directly tied to the very same accused suspects unlawful manufacturing, distribution, and sales of several billion dollars of counterfeit, fake, or unauthorized versions of Adobe's, Microsoft's, and now Greenway's name brand products as well bearing each of the aforementioned companies valid US trademark.

18.    "Operation Software Slashers" is defendant DHS' as well as the United States Department of Justice's (USDOJ') single largest piracy investigation that has ever been successfully prosecuted by the USDOJ that has netted in excess of over twenty-six million ($26,0000,000) dollars during federal civil asset forfeiture proceedings that had already taken place against at least six other accused suspects who had admitted to acquiring from, as well as later unlawfully reselling over one hundred million ($100,000,000) dollars of infringing, counterfeit, fake, or unauthorized versions of Adobe' as well as Microsoft's software products directly from the same accused suspects who were also named in Greenway's criminal complaint, which is attached hereto at **Exhibit "4."**

19.    Gibson also informed Plaintiffs that on or about January 2015, that sealed federal criminal indictments for trademark infringement, wire fraud, as well as money laundering had already been filed against the same accused suspects and that the Kansas City US Attorneys Office for the Western District of Missouri had already agreed that Greenway would also be added as a victim in the US government's case against the accused suspects in conjunction with Adobe and Microsoft.

20.    Gibson also informed Plaintiffs that Greenway would be able to recover compensatory damages from the victims' restitution fund that had in excess of twenty-six million ($26,000,000) dollars that had already been set up by DHS and USDOJ during asset forfeiture proceedings against several of the accused suspects who had already plead guilty to violating numerous federal criminal statutes.

5

COMPLAINT

21.    Gibson also informed plaintiffs Escamilla and Greenway that Plaintiffs would no longer ever need to worry about having to hire another private attorney ever again to pursue the accused suspects ongoing theft of millions of dollars of Greenway's name brand products bearing Plaintiffs valid US trademark because defendant DHS, in conjunction with the USDOJ operating out of Western District of Kansas City Missouri, had already agreed to prosecute Greenway' criminal case against the same accused suspects.

22.    Later, in or about June of 2015, plaintiffs Escamilla and Greenway then proceeded to advise Gibson and DHS that the accused suspects unlawful theft as well as the ongoing manufacturing, distribution, and sales of millions of dollars of counterfeit, fake, or unauthorized versions of Plaintiffs property that was being unlawfully sold directly back to Greenway' very own customer base and at significantly reduced pricing, while clearly bearing Greenways' valid US trademark, had continued to cause the plaintiff Escamilla severe emotional distress, causing plaintiff Escamilla and Greenway to have to continue to unnecessarily endure extreme ongoing financial hardships, caused plaintiff Escamilla to become emotionally distraught, depressed, and destitute, so much so that plaintiff Escamilla was eventually forced to have to live out of his truck or sleep in Greenway's warehouse at that time and that Greenway as a company, was barely able to meet any of the companies financial obligations.

23.    Gibson then reassured plaintiffs Escamilla and Greenway that DHS' criminal investigation was coming along fine and that the accused suspects in or case would eventually be brought to justice; evidence of which is attached hereto at **Exhibit "5."**

24.    In August 2015, Gibson scolded Plaintiffs for inquiring about DHS' ongoing criminal investigation into the accused suspects unlawful conduct while reassuring Plaintiffs that these types of criminal investigations take time and that all

6

of the accused suspects who have violated federal criminal statutes would be brought to justice; evidence of which is attached hereto at **Exhibit "6."**

25.    On October 4, 2016, Escamilla and Greenway again contacted Defendant Gibson via email informing Gibson that the accused suspects were continuing to unlawfully still shipping hundreds of thousands of dollars of counterfeit, fake, or unauthorized versions of Greenway' name brand products bearing Greenway's US federal trademark; evidence of which is attached hereto at **Exhibit "7."**

26.    On or about October 12, 2016, Escamilla and Greenway once again emailed Gibson to inform him that the accused suspects were still unlawfully also selling counterfeit, fake, or unauthorized versions of Greenway's brand name products bearing Greenway's valid US trademark; evidence of which is attached hereto at **Exhibit "8."**

27.    On or about October 28, 2016, despite repeated reassurances to the contrary, and almost a full 14 months later, to Plaintiffs' utter shock and amazement Gibson contacted Escamilla and Greenway via email stating the following:

> Mr. Escamilla, We have researched your claims and consulted with the United States Attorney's Office, Western District of Missouri and while we sympathize with your situation, we have been advised that on August 17, 2015 a District Court found in favor of Selakovic against Greenway Nutrients in regards to the assertion of the Greenway trademark. While we understand that you may disagree with this judgement, our agency is bound by decision of the court and therefor are restricted on what we can do in regards to your claims that they continue to sell your products illegally. My suggestion is to seek legal alternatives such as an appeal of the decision and if you should receive an affirmative decision we can revisit our involvement against the distribution of the Greenway products.
>
> Regardless, we continue to investigate the alleged criminal activities in regards to his alleged distribution of counterfeit software. Please let me know if you have any questions.

28.    That same day, Plaintiffs immediately responded to Gibson and DHS and Plaintiffs were immediately able to provide evidence to DHS and Gibson to the

COMPLAINT

contrary and that no such ruling had ever taken place in Greenway's initial Colorado civil court case as noted by the court which stated the following:

> Having reviewed the Defendants motion and the record, the Court finds that the Defendants have failed to establish that this is an exceptional case under the Lanham Act or that it lacked substantial justification under § 13-17-102. The Court notes that at the time the case was dismissed for the Plaintiffs failure to maintain a valid address or to obtain counsel, its claims for trademark infringement, false designation of origin, and unjust enrichment were still viable. These claims were not adjudicated on the merits and the Court therefore cannot find that the suit was unfounded or groundless.

A copy of the Order is attached hereto at **Exhibit "9."**

29.    Several weeks later, on or about November 21, 2016, and only after Escamilla and Greenway had still not received any type of response from defendants DHS or Gibson regarding the accused suspects ongoing and unlawful conduct as it relates to the illegal manufacturing, distribution, and sales of Plaintiffs products, clearly bearing Plaintiffs US trademark, once again emailed defendants DHS and Gibson to inquire as to what was taking place with Greenway' criminal investigation against the accused suspects and what specific federal court ruling or legal decision was it that defendants DHS or Gibson had reviewed in order for defendants DHS or Gibson to have arrived at their erroneous legal conclusion that was based off a federal court ruling that had never taken place in Greenway' initial Colorado civil court case.

30.    Plaintiffs also advised Gibson that Escamilla felt like he was being discriminated against because Escamilla is a Mexican- American small businessman and that neither Escamilla nor Greenway was represented by private legal counsel and that DHS and Gibson were taking advantage of, while unlawfully and intentionally depriving plaintiffs Escamilla and Greenway of its "property, as well as due process of federal law" under the fourth and fourteenth amendments of our United States Constitution and the Bill of Rights.

31.    On November 21, 2016, defendant Gibson contacted plaintiffs Escamilla and Greenway via email stating in part: "While I understand your

8

frustration and concerns, our agency cannot move forward with any investigation involving your trademark until you resolved this issue with the District Court in Colorado that issued the decision."   A copy of the email is attached hereto at **Exhibit "10."**

32.    Later, on or about April 11, 2016, Escamilla and Greenway advised DHS and Gibson that Plaintiffs had just discovered new and compelling evidence that should have negated any and all erroneous assertions that defendants DHS or Gibson may have initially reached in Plaintiffs criminal investigation that should have also immediately triggered Greenway' criminal case to be immediately reopened due to the fact that Greenway' former attorney named Michael J. Ryan (Ryan) who was still supposed to be lawfully bound by the terms of Plaintiffs non-disclosure non circumvent agreement was now also unlawfully divulging, sharing, as well as disclosing Greenway' confidential business information as well as trade secrets with the accused suspects and that Greenway' former attorney Ryan was now also unlawfully representing the accused suspects in Greenway' criminal case.

33.    Later on or about May 1, 2017, and only after not receiving any type of response from defendants DHS or Gibson regarding Plaintiffs new compelling evidence that clearly demonstrated that Plaintiffs were in fact, the victims of an ongoing federal crime, and that Plaintiffs once again, followed all of the proper federal law enforcement civil rights reporting protocols as prescribed by DHS' very own instructions, and in order for Greenway to have lawfully exhausted all available federal law enforcement remedies for reporting civil rights violations, plaintiffs Escamilla and Greenway filed a formal 18 U.S.C. § 242 deprivation of civil rights under the color of law complaint against Gibson and DHS with DHS' Office for Civil Rights and Civil Liberties.   A copy of the complaint is attached hereto at **Exhibit "11."**

34.    Plaintiffs clearly informed CRCL that Plaintiffs were unlawfully being discriminated against because Plaintiffs were not represented by private counsel,

1  while simultaneously being unlawfully deprived of "property as well as due process
2  of federal law" as prescribed under the Fourth and Fourteenth Amendments.

3        35.    To Plaintiffs' utter shock and amazement, within twenty-four (24)
4  hours, and on or about May 2, 2017, and without either plaintiff Escamilla or
5  Greenway every once being able to speak with any federal law enforcement officer
6  with DHS or CRCL, Greenway' formal federal civil rights complaint was
7  summarily rejected.

8        36.    On or about July 27, 2017, after feeling deceived, let down, as well as
9  repeatedly casually brushed aside by defendants Gibson as well as DHS, Plaintiffs
10  once again, and in order to ensure that Plaintiffs fully exhausted all of Plaintiffs
11  available federal law enforcement remedies, plaintiff Escamilla then followed
12  defendant DHS' federal law enforcement guidelines and proper reporting protocols
13  in order to properly escalate matters to DHS' Office of Professional Responsibility
14  ("OPR"); evidence of which is attached hereto at **Exhibit "12."**

15       37.    OPR investigates misconduct allegations based upon the following
16  criteria: allegations that, if true, would constitute violations of state or federal
17  criminal law; or allegations of misconduct that, if true, would jeopardize or
18  undermine the agency's ability to perform its mission. In cases of potential
19  misconduct, OPR prepares reports of its investigations for possible judicial or
20  management action. OPR also provides independent reviews of DHS' programs
21  and offices, adjudicates DHS background investigations and issues security
22  clearances for all prospective and current DHS employees and contract staff.

23       38.    On or about July 27, 2017, is when Plaintiffs first spoke to Simons
24  who is OPR' Duty Agent in Charge of the Los Angeles Region one and two.

25       39.    Simons advised plaintiffs that he, defendant Simons, would research as
26  well as investigate Plaintiffs latest allegations and claims of misconduct by
27  defendant Gibson further, and that if Plaintiffs did not hear back from any other
28  federal law enforcement official with DHS by August 4, 2017, that Plaintiffs should

give Simons a call back in order so that defendant Simons would be able to ensure that Escamilla and Greenway would be able to speak with, or have its new updated information that should be immediately submitted into evidence in order to have plaintiff Greenway' criminal case properly investigated by defendants DHS, Gibson or any other federal law enforcement official that is employed by defendant DHS.

40.   On or about August 3, 2017 at approximately 3:00 p.m. PST, and only after not hearing back from any federal law enforcement official with DHS, Escamilla then followed defendant Simons instructions and phoned defendants Simons and OPR back in order to properly follow up with Plaintiffs latest allegations concerning the plaintiff' criminal investigation.

41.   During that August 3, 2017, phone call defendant Simons informed plaintiffs Greenway that defendant Simons had looked into Plaintiffs earlier criminal allegations a little further and that defendant Simons was acquainted with and knew defendant Gibson personally who was in charge of Greenway' criminal investigation because defendant Gibson had also previously worked for DHS in the Los Angeles area as well.

42.   Simons then advised Escamilla and Greenway that Gibson had advised Simons and OPR that Greenway would need to return to a federal civil court of law in order to overturn a ruling that never actually occurred and as it relates to Greenway' trademark in Greenway' Colorado civil court case that was eventually dismissed without prejudice.

43.   Escamilla could not believe what he was hearing and then proceeded to explain to defendant Simons that no such court federal court ruling or legal decision had taken place or been reached in favor of the accused suspects and against Greenway' in Greenway' initial Colorado civil court case as it relates to Greenway's trademark.

44.   Plaintiffs directed Simons to Greenway's Colorado civil court case docket that is readily available online and in order to prove to defendant Simons

11

COMPLAINT

that no such legal decision or federal court ruling had ever taken place in Greenway initial civil case and as it relates to Greenway' trademark, which clearly states in part:

> Having reviewed the Defendants motion and the record, the Court finds that the Defendants have failed to establish that this is an exceptional case under the Lanham Act or that it lacked substantial justification under § 13-17-102. The Court notes that at the time the case was dismissed for the Plaintiffs failure to maintain a valid address or to obtain counsel, its claims for trademark infringement, false designation of origin, and unjust enrichment were still viable. These claims were not adjudicated on the merits and the Court, therefore, cannot find that the suit was unfounded or groundless.

45.     After Escamilla took the time to review Greenway's federal court docket together with defendant Simons, Simons initially agreed and concurred that no such August 17, 2016, federal court ruling or legal decision had ever occurred or taken place ruling in favor of the accused suspects and against Greenway in the Colorado civil court case and as it specifically related to Greenway' ownership of its trademark. It was at that time that Simons then stated: "I am going to have to talk to Shawn (Gibson) about this and get back to you on this."

46.     The very next day, on August 4, 2017, at approximately 10:30 a.m. PST, Simons abruptly changed his story by phoning Escamilla that Simons had once again, spoken with Gibson, and that defendant Gibson stated that Greenway would need to return back to federal civil court in order to be able to receive a favorable court ruling or legal decision as it relates to Greenway' ownership of its valid US trademark against accused suspects before DHS would be able to even consider investigating or prosecuting Greenway' criminal complaint any further.

47.     Plaintiffs then voiced their displeasure with Simon's and Gibson's joint legal conclusions and Plaintiffs then inquired as to what specific federal August 17, 2016, document or federal court ruling were defendants Simons or Mr. Gibson were referring to as it relates to any adverse legal decision as it specifically relates to Greenway' actual ownership of its valid US federal trademark.

12

COMPLAINT

48.     Simons then explained that after his own, as well as defendant Gibson' review of Greenway' federal civil court docket and complaint, and stated that "while there may not have ever been any actual adverse legal decision ruling against Greenway' trademark, there was no actual ruling or legal decision that ruled in favor of Greenway' trademark that clearly stated that Greenway owned the rights to its valid US trademark."

49.     Plaintiffs could not believe what they were hearing and plaintiff Escamilla further explained that Greenway had already taken the time to expend considerable resources in order to have already gone through the process of lawfully obtaining a valid US trademark and that was all that was lawfully required by law as proof of ownership of Greenway' trademark.

50.     Escamilla also pointed out that there was absolutely no need for Greenway or plaintiff Escamilla to have expend additional financial resources in order to be able to hire another federal civil attorney while having to go through all of the unnecessary costly expenses of having to return back to a federal civil court of law in order to prove that Greenway was the owner of a trademark that Greenway had already lawfully obtained from the United States Patent and Trademark Office.

51.     Seeming unmoved, and in a very cavalier fashion, defendant Simons explained to plaintiff Escamilla the following:

> I don't know what to tell you, Mr. Escamilla, you are going to have to go back to federal court and acquire a legal decision in favor of Greenway and against Mr. Selakovic before DHS can proceed any further with its criminal investigation into your own as well as your companies [sic] criminal allegations.

52.     Escamilla told Simons that Escamilla and Greenway felt that Gibson was being completely untruthful and totally dishonest and that Greenway was in possession of evidence to the contrary and that plaintiffs Escamilla and Greenway had also recently discovered new and compelling evidence that Greenway' former attorney had participated in the ongoing theft, and was also unlawfully representing

13

1  the accused suspects in our matter that was clearly adverse and detrimental to
2  Greenway and that plaintiffs Escamilla and Greenway would like to file a formal
3  misconduct complaint as prescribed by OPR' and DHS' very own federal law
4  enforcement misconduct guidelines and reporting protocols and against Mr.
5  Gibson.

6      53.    To Plaintiffs' total and complete disbelief, defendant Simons then
7  advised Escamilla: *"You can file anything you want because I am not going to do*
8  *anything with it anyway."*

9      54.    Escamilla expressed to Simons that Plaintiffs civil rights were being
10  violated pursuant to Title 18, U.S.C., Section 242 deprivation of rights under color
11  of law, and further explained that Escamilla, as well as Greenway, were being
12  unlawfully subjected to an intentional infliction of severe emotional distress while
13  also being unlawfully stripped and deprived of its "life, liberty, and property" as
14  well as of any actual due process of federal law as prescribed under the fifth and
15  fourteenth amendments of the United States Constitution and Bill of Rights and that
16  his explanation as to why Simon, Gibson, or DHS was unwilling to look at, revisit,
17  or even allow Greenway to introduce any new evidence that is incredibly damaging
18  and critical to Greenway' entire case was totally unfair and completely
19  unacceptable.

20      55.    Escamilla then requested that defendant Simons provide Plaintiffs with
21  something in writing as so that Greenway or Escamilla would have been be able to
22  properly understand Simons' and Gibson's erroneous legal conclusions, decisions,
23  and position in order for Greenway to have been able to properly defend its
24  lawfully entitled rights accordingly going forward.

25      56.    Simons abruptly denied and outright refused to provide plaintiffs
26  Escamilla or Greenway with anything in writing.

27      57.    Simons then stated to Escamilla: "If you don't like it, I would be more
28  than happy to forward you to our FOIA request line."

14

COMPLAINT

58.   Escamilla expressed to defendant Simons that was not at all fair to force Greenway have to now also go through the unnecessary process of having to file a another separate federal civil court action in order to be able to acquire something in writing defendant Simons and that what defendant Simons was attempting to explain to Plaintiffs made absolutely no sense whatsoever and that if defendant Simons felt that his legal position was at all lawful, valid, or fair that defendant Simons should have been be to immediately provide Greenway with something in writing.

59.   Escamilla also explained to defendant Simons that Greenway was in possession of new and very damming evidence that should have invalidated and negated any and all assertions that DHS or the USDOJ may have previously reached in Greenway' criminal investigation and that plaintiffs Escamilla and Greenway continue to suffer millions of dollars in damages as a result of the accused suspects ongoing theft of Plaintiffs products bearing Plaintiffs US trademark.

60.   Simons then stated to Escamilla: "I don't know what to tell you, Mr. Escamilla, you can do whatever you want to do because you are just unhappy with the outcome of our criminal investigation and there is nothing more that I or DHS can do for you until you clear up your ownership of the Greenway' trademark."

61.   Feeling completely disappointed, let down, shocked, as well as confused, plaintiff Escamilla then thanked Simons for all of his valuable time and consideration and proceeded to conclude the call.

62.   Escamilla and Greenway continue to suffer many millions of dollars in damages because of the wrongful actions described.

/ / /

/ / /

/ / /

COMPLAINT

**FIRST CAUSE OF ACTION**

**(42 U.S.C. § 1983 Violations of Plaintiffs' Rights Under the United States Constitution.)**

63.    Plaintiffs reallege paragraphs 1 through 62 above and incorporate the above herein by reference.

64.    In doing the acts complained of herein, Defendants deprived Plaintiffs of their rights under the United States Constitution.

65.    Defendants, in committing the acts herein alleged, were acting under color of law set forth under the Fifth and Fourteenth Amendments to the United States Constitution.

66.    Defendants were acting in accordance with their custom, policy and/or practice in violating Plaintiffs' constitutional rights as set forth above.

67.    As a direct and proximate result of Defendants' wrongful acts alleged herein, Plaintiffs suffered damages, including humiliation and damage to their reputation, physical pain, emotional distress, and deprivation of Plaintiffs' constitutional rights, in amount to be proved at trial.

68.    Defendants committed the actions alleged herein maliciously, fraudulently, oppressively and with the wrongful intention of injuring plaintiff. Defendants acted with an improper motive amounting to malice and with conscious disregard of plaintiff's rights. As such, plaintiff is entitled to recover punitive damages from defendants in an amount according to proof at the time of trial.

**SECOND CAUSE OF ACTION**

**(42 U.S.C. § 1983 Violations of Plaintiffs' Right to Due Process.)**

69.    Plaintiffs reallege paragraphs 1 through 68 above and incorporate the above herein by reference.

70.    In doing the acts complained of herein, Defendants deprived Plaintiffs of their rights to Procedural and Substantive Due Process under the United States

16

COMPLAINT

Constitution as set forth under the Fifth and Fourteenth Amendments to the United States Constitution.

71.     Defendants refusal to review, admit, or allow Greenway's new evidence to DHS, Gibson, OPR, as well as Simons, that clearly demonstrated that Greenway was in fact, the victim of an ongoing federal crime was unconstitutional in that it violated the due process protections guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 7 and 15 of the California Constitution.   Defendants' refusal to allow Plaintiffs' evidence to be reviewed was arbitrary and capricious, and without any support in fact or rational basis.

72.     Defendants' actions in administering and maintaining proper standards of federal law enforcement protections have deprived Plaintiffs of liberty and property interests protected by the Fifth Amendment. Defendants were grossly negligent, reckless, and/or deliberately indifferent to the risk that the deprivations these actions caused. The deprivations are without due process of law because Plaintiffs were denied the opportunity to provide or submit into evidence, or even given the opportunity to contest Defendants OPR's DHS' Gibson's or Simon's decisions.   Defendants failed to provide constitutionally adequate mechanisms for Plaintiffs to avoid being subjected to unlawful conduct at the hands of the accused suspects that continues to needlessly cause grave harm to Plaintiffs.

73.     Defendants, in committing the acts herein alleged, were acting under color of law.

74.     Defendants were acting in accordance with their custom, policy and/or practice in violating Plaintiffs' constitutional rights as set forth above.

75.     As a direct and proximate result of Defendants' wrongful acts alleged herein, Plaintiffs suffered severe damages, including humiliation and damages to their reputation, emotional distress, and deprivation of their constitutional rights, according to proof at the time of trial.

COMPLAINT

76.     Defendants committed the actions alleged herein maliciously, fraudulently, oppressively and with the wrongful intention of injuring Plaintiffs. Defendants acted with an improper motive amounting to malice and with conscious disregard of Plaintiffs' rights. As such, Plaintiffs are entitled to recover punitive damages from Defendants in an amount according to proof at the time of trial.

## THIRD CAUSE OF ACTION

### (42 U.S.C. § 1983 Violations of Plaintiffs' Right to Equal Protection)

77.     Plaintiffs reallege paragraphs 1 through 76 above and incorporate the above herein by reference.

78.     In doing the acts complained of herein, Defendants deprived Plaintiffs of their right to Equal Protection under the United States Constitution as set forth under the Fourteenth Amendment to the United States Constitution;

79.     Defendants acted in a discriminatory manner, with the intent to discriminate, in that plaintiff Escamilla is a Mexican-American small businessman and was not represented by private legal counsel.

80.     Defendants, in committing the acts herein alleged, were acting under color of law.

81.     Defendants were acting in accordance with their custom, policy and/or practice in violating Plaintiffs' constitutional rights as set forth above.

82.     As a direct and proximate result of Defendants' wrongful acts alleged herein, Plaintiffs continue to suffer severe damages, including humiliation and damage to its reputation, physical pain, emotional distress, and deprivation of its constitutional rights, according to proof at the time of trial.

83.     Defendants committed the actions alleged herein maliciously, fraudulently, oppressively and with the wrongful intention of injuring Plaintiffs. Defendants acted with improper motive amounting to malice and with conscious disregard of Plaintiffs' rights. As such, Plaintiffs are entitled to recover punitive damages from Defendants in an amount according to proof at the time of trial.

18

**FOURTH CAUSE OF ACTION**

**(Interference With Exercise Of Civil Rights – Cal. Civ. Code § 52.1)**

84.    Plaintiffs reallege paragraphs 1 through 83 above and incorporate the above herein by reference.

85.    Defendants' outright refusal to allow Plaintiffs to enter into new evidence that clearly demonstrated that Plaintiffs continue to be in fact, the victims of an ongoing federal crime, interfered with plaintiffs' constitutional rights granted to her under the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, 3 Sections 3, 4, 7, 13 and 15 of the California Constitution.

86.    The acts of Defendants herein alleged were done with malice, fraud, and oppression, and in reckless disregard of Plaintiffs' constitutional rights.

87.    As a proximate result of the acts of Defendants herein alleged, Plaintiffs incurred both economic and noneconomic damages.

88.    Defendants committed the actions alleged herein maliciously, fraudulently, oppressively and with the wrongful intention of injuring Plaintiffs. Defendants acted with an improper motive amounting to malice and with conscious disregard of Plaintiffs' rights. As such, Plaintiffs are entitled to recover punitive damages from Defendants in an amount according to proof at the time of trial.

**FIFTH CAUSE OF ACTION**

**(Intentional Infliction of Emotional Distress)**

89.    Plaintiffs reallege paragraphs 1 through 88 above and incorporate the above herein by reference.

90.    On or about July 27, 2017, through August 4, 2017, Defendants unlawfully and intentionally stripped as well as denied Plaintiffs of any actual due legal process.   Defendants were aware Plaintiffs were in possession of new evidence that was critical to a successful resolution to Plaintiffs' criminal allegations against the accused suspects, and that Defendants' refusal to allow

19

1  Plaintiffs to properly defend their own rights with the intention of causing, or
2  reckless disregard of the probability of causing, emotional distress to Plaintiffs.

3     91.   The acts of Defendants herein alleged were willful, despicable,
4  malicious, and oppressive.

5     92.   As a proximate result of the acts of Defendants herein alleged,
6  Plaintiffs incurred and continue to incur severe emotional distress and mental
7  suffering.

**SIXTH CAUSE OF ACTION**

**(Negligent Infliction of Emotional Distress)**

10    93.   Plaintiffs reallege paragraphs 1 through 92 above and incorporates the
11 above herein by reference.

12    94.   On or about July 27, 2017, through August 4, 2017, Defendants
13 unlawfully and recklessly stripped, as well as denied, Plaintiffs of any actual due
14 legal process.   Defendants were aware Plaintiffs were in possession of new
15 evidence that was critical to a successful resolution to Plaintiffs' criminal
16 allegations against the accused suspects, and that Defendants refusal to allow
17 Plaintiffs to properly defend their own rights with careless indifference or reckless
18 disregard of the probability of causing emotional distress for plaintiff.

19    95.   The acts of Defendants herein alleged were willful, despicable,
20 malicious, and oppressive.

21    96.   As a proximate result of the acts of Defendants herein alleged,
22 Plaintiffs incurred severe emotional distress and mental suffering.

**SEVENTH CAUSE OF ACTION**

**(Declaratory and Injunctive Relief)**

25    97.   Plaintiffs reallege paragraphs 1 through 96 above and incorporate the
26 above herein by reference.

27    98.   An actual and immediate controversy has arisen and now exists
28 between Plaintiffs and Defendants related to their respective rights and duties.

20

Defendants have unlawfully failed to comply with constitutional requirements by engaging in the acts and omissions described in this Complaint. Plaintiffs are therefore entitled to a declaration of rights over this controversy that Defendants' obvious and inadequate respect for following proper law enforcement reporting protocols are unconstitutional under Fifth and Fourteenth Amendments.

99.   Plaintiffs have no adequate remedy at law. Defendants have acted, and continue to act, to deprive Plaintiffs of their mutual constitutional rights. Plaintiffs are suffering and will continue to suffer irreparable injury as a result of the policies and practices described in this Complaint unless those policies and practices are enjoined by this Court. Plaintiffs have no plain, adequate, or speedy remedy at law and are entitled to injunctive relief against Defendants. Plaintiffs have no administrative remedy because Defendants' policies and practices preclude any administrative determinations from affording actual relief.

/ / /

/ / /

/ / /

COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following:

a.    For compensatory damages according to proof;

b.    For exemplary and punitive damages according to proof;

c.    For costs of suit, including attorneys' fees;

d.    For a declaration that Defendants' obvious and inadequate respect for following proper law enforcement reporting protocols are unconstitutional under Fifth and Fourteenth Amendments.

e.    For an injunction requiring Defendants to remedy immediately the Constitutional violations of Plaintiffs' rights to their property as well as due process of law.

f.    And such other and further relief as the Court may deem appropriate.

DATED: October 2, 2017                    LAW OFFICE OF MAINAK D'ATTARAY


_____/s/ Mainak D'Attaray_____
Mainak D'Attaray
*Attorneys for Plaintiffs*

22

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

23

COMPLAINT

# FBI Contact

*On April 22, 2013 Greenway Nutrients president Gus Escamilla was contacted by Special Agent Kenneth McGuire with the Los Angeles field office of the United States Federal Bureau of Investigation.*



**Trade Secret Theft Incident**                                        Monday, April 22, 2013 2:36 PM ● ☆

From:  "McGuire  Kenneth G." <Kenneth.McGuire@ic.fbi.gov>

To:  "gescamilla@ymail.com" <gescamilla@ymail.com>

Full Headers Printable View

Mr. Escamilla,
I'm contacting you regarding your incident report regarding your communication regarding the theft of your company's trade secret.  I've also left a voice message for you.

You are welcome to contact me at the phone number in my signature line.  I can also be reached through my office's general number - (310) 477-6565.  I look forward to speaking with you.

- Ken
Kenneth McGuire, Special Agent, FBI-Los Angeles | Telephone (310) 996-4073, Fax (310) 996-3836
11000 Wilshire Boulevard, Ste 1700, Los Angeles, CA 90024

After FBI Agent Kenneth McGuire informed Greenway Nutrients President Gustavo Escamilla that the FBI does not maintain jurisdiction over federal criminal trademark infringement matters, that the local US prosecutors office only considers prosecuting criminal trademark infringement matters in excess of two million ($2,000,000.00) dollars, and that plaintiff Greenway' criminal trademark infringement complaint was simply just not big enough.

Greenway then proceeded to seek the assistance of US Congressman Anthony Cardenas' Office.

Congressman Cardenas' office was told that the **FBI DOES NOT MAINTAIN JURISDICTION** over Greenway' federal trademark infringement claims and HSBC Bank Money Laundering allegations.

*ning*

Gavidia, Brian <Brian.Gavidia@mail.house.gov> wrote:

Hello Gustavo,

I'm sorry to hear that you are going through these negative circumstances. A year ago when you came into the office, I called the FBI and they informed me that your case was not within their jurisdiction and I informed you of that fact. Unfortunately all of these issues are legal matters and our office has limited jurisdiction over them.

I apologize that our office cannot provide assistance with this matter in particular, however I am happy to help with any other Federal related issue that is not pertaining to a legal matter.

Please feel free to e-mail me if you have any questions or concerns.

Thank you.

Respectfully,

*"A year ago when you came into the office, I called the FBI and they informed me that your case was not within their jurisdiction and I informed you of that fact."*

Brian Gavidia
Field Representative
Office of Congressman Tony Cárdenas
8134 Van Nuys Blvd, Suite 206
Panorama City, CA 91402
P: (818)781-7407
F: (818)781-7462

Sign up to stay up-to-date with Congressman Cárdenas
website I twitter I youtube I facebook I instagram

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2

24

COMPLAINT

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 14-81102-CIV-COHN/SELTZER

ADOBE SYSTEMS INCORPORATED,
A Delaware Corporation,

      Plaintiff,

v.

BEA'S HIVE LLC, a Florida Limited
Liability Company; FULFILLMENT
SOLUTION SERVICES, LLC, a Florida
Limited Liability Company; NEW EPIC
MEDIA LLC, a Florida Limited Liability
Company; SELACORP, LTD, a Nevada
Corporation; SUPREME GROWERS LLC,
a Florida Limited Liability Company;
VEGALAB LLC, a Delaware Limited
Liability Company; STEVEN
BLACKBURN, an Individual; DAVID
SELAKOVIC, an Individual; STACY
BLACKBURN, an Individual; TOP SOFT
DEALS LLC, a Florida Limited Liability
Company; RICHARD NEUMAYER, an
Individual; and DOES 4-19, Inclusive,

      Defendants.

_____/

 ### PERMANENT INJUNCTION AGAINST DEFENDANTS DAVID SELAKOVIC AND SELACORP, LTD., AND FINAL ORDER OF DISMISSAL WITH PREJUDICE 

The Court, pursuant to the Stipulation for Entry of Permanent Injunction & Dismissal with Prejudice [DE 204] ("Stipulation"), between Plaintiff ADOBE SYSTEMS INCORPORATED ("Plaintiff"), on the one hand, and Defendants DAVID SELAKOVIC ("Selakovic") and SELACORP, LTD. ("Selacorp") (collectively "Defendants"), on the other hand, hereby **ORDERS, ADJUDICATES, and DECREES** that a Permanent Injunction is

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

25

COMPLAINT

**Bea's Hive conspiracy**

Thursday, February 26, 2015 9:49 AM ●  ☆

From:  "Suarez | Carlos" <Carlos.Suarez@ice.dhs.gov>

To:  "gescamilla@ymail.com" <gescamilla@ymail.com>

Full Headers Printable View

Mr. Escamilla,

I was given your information by representatives with Adobe Systems and the Microsoft Corporation.  If it all possible, I would like to conduct an interview with you either on 3/2/2015 or 3/3/2015, concerning the information you included in an email sent on October 5, 2014, to Michael A. Sink at his email address, MSink@perkinscoie.com.  We have a criminal investigation open out of the Kansas City Office and I will only be in town on the days I noted above.

I attempted to leave you a message on the phone listed on the email (818-355-0062), but when I tried it today, it seems to be disconnected.  My contact information is listed below.  Please reach out to me at your earliest convenience so we can set a time and date.

Thanks,

**Carlos Suarez**
Special Agent
Homeland Security Investigations
HSI Kansas City
Office (816) 802-8586
Cell (816) 914-4959
E-mail: Carlos.Suarez@dhs.gov

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 4

26

COMPLAINT

**Department of Justice**

Office of Public Affairs

---

FOR IMMEDIATE RELEASE

Thursday, December 17, 2015

## Operation Software Slashers: Six Defendants Plead Guilty to $100 Million Software Piracy Scheme

U.S. Attorney Tammy Dickinson of the Western District of Missouri announced today that a Seattle man became the sixth defendant convicted in federal court for his role in one of the largest software piracy schemes ever prosecuted by the U.S. Department of Justice.

"An investigation that began in Kansas City, Mo., uncovered one of the largest software piracy schemes ever prosecuted by the U.S. Department of Justice, with tentacles reaching into cities across the United States and overseas," said U.S. Attorney Dickinson. "Investigators seized more than $20 million in assets from conspirators who are estimated to have sold in excess of $100 million worth of illicit, unauthorized and counterfeit software products to thousands of online customers. Software piracy is a significant economic crime that victimizes not only software developers and manufacturers, but unwitting consumers. Today's announcement is part of an ongoing investigation. We can't provide additional information about the investigation at this time, but we expect that more offenders soon will be brought to justice."

"Pirating software, particularly on this massive scale, damages the American economy, hurts private businesses and harms the unsuspecting buyer," said acting Special Agent in Charge James Gibbons of U.S. Immigration and Customs Enforcement's Homeland Security Investigations (ICE-HSI) Chicago. "These plea agreements mark a historic day for our HSI special agents, and our law enforcement partners, in the fight to stop the theft of intellectual property."

Rex Yang Jr., 37, of Seattle, waived his right to a grand jury and pleaded guilty before Chief U.S. District Judge Greg Kays of the Western District of Missouri on Dec. 16, 2015, to a federal information that charges him with participating in a criminal conspiracy from Jan. 1, 2009, to Dec. 10, 2014.

Yang, who owned and operated Digisoft LLC and Premiere Software Inc., is the sixth and final defendant to plead guilty in separate, but related, cases in this stage of an ongoing criminal investigation that originated with a Kansas City, Missouri, company. Many of these defendants and their related entities had been sued civilly for willful trademark and copyright infringement by Microsoft and other software developers.

The multimillion-dollar scheme, which involved co-conspirators operating overseas in the People's Republic of China, Singapore and Germany and across the United States, illegally sold millions of dollars of Microsoft Corporation and Adobe Systems Inc. software product key codes through a charitable organization and several online businesses. Product key codes are used to obtain full access to unlocked, licensed versions of various copyrighted software programs. The conspirators distributed more than 170,000 product activation key codes and many of these key codes were each used and activated numerous times.

Investigators seized more than $20.6 million in assets, including $10,188,777 seized from bank and investment accounts, 10 luxury automobiles and 27 parcels of real estate with a total market valuation of $9,739,399, through federal forfeitures. Affidavits filed in those forfeiture complaints estimate that conspirators reaped about $30 million in profits from customers who paid more than $100 million for the software.

Search warrants have been executed at 13 separate residential and business locations in five different states in the course of this investigation.

### Kansas City: *USA v. Ross*

Casey Lee Ross, 29, of Kansas City, pleaded guilty on June 11, 2015, to his role in the conspiracy. The investigation began in 2013, when federal agents in Kansas City learned that Ross, the owner of Software Slashers, had purchased and redistributed tens of thousands of illegitimate and unauthorized Microsoft product key codes and counterfeit product key cards from sources in China.

Ross admitted that he purchased approximately 30,159 product key codes and counterfeit product key cards. Ross purchased these product key codes at prices well below that of the estimated retail price. In many cases, they were distributed on counterfeit card stock intended to make it appear as if they were genuine Microsoft products.

Ross distributed large quantities of these product key codes and counterfeit Microsoft product key cards to co-conspirators in the United States, who in turn sold the product key codes and counterfeit product key cards through their respective websites, as well as on e-commerce sites such as eBay or Amazon. Ross admitted that he received $1,387,595 from Yang; $1,127,190 from Matthew Lockwood, 38, of Denver; $875,630 from Reza Davachi, 41, of Damascus, Maryland; and payment for approximately 2,569 unauthorized product key codes from Arunachalam Annamalai, 48, a citizen of India residing in Las Vegas.

### Seattle: *USA v. Yang*

Yang admitted that he possessed approximately 10,205 Microsoft certificates of authenticity. In addition to his purchase from Ross, Yang paid $402,929 to Davachi to acquire various software and software components. Yang also admitted that he sold various software items to Lockwood for $1,574,054.

### Denver: *US v. Lockwood*

Lockwood pleaded guilty on June 11, 2015, to his role in the conspiracy. In addition to his purchases from Ross and Yang, Lockwood, doing business as Discount Mountain Inc., paid Davachi $1,243,570 for counterfeit, illicit and/or unauthorized software and software components.

Lockwood admitted that he obtained approximately 6,165 certificates of authenticity, 4,996 "Lenovo" product key cards and approximately 11,000 unauthorized product key codes.

### Baltimore: *US v. Davachi*

Davachi pleaded guilty on Oct. 20, 2015, to his role in the conspiracy. Davachi admitted that, in addition to his purchases from Ross, he paid $672,300 to a counterfeiter within the People's Republic of China as payment for unauthorized product key codes and counterfeit product key cards.

Federal agents seized approximately 5,040 Microsoft operating system certificates of authenticity – valued at $1.26 million – while executing search warrants at Davachi's residence and business. Davachi also admitted that he used Project Contact Africa, a charitable organization, as a way of operating his for-profit Rez Candles Inc. business, which sold a host of items online, including illicit, unauthorized and counterfeit software. Davachi was aware that the stated purpose of the charity was to "support a medical clinic in Africa for needy families and children" and children suffering from HIV.

Davachi's role was managing and maintaining the on-line presence of the Project Contact Africa eBay/PayPal charity since January 2004. Over this time, Davachi actively used the Project Contact Africa charity's eBay/PayPal account to sell unauthorized, illicit and counterfeit software and software components through eBay, and used the charity's PayPal account to facilitate payments for these software components.

Davachi managed and maintained the online presence for the Project Contact Africa charity by a person identified in court documents as Individual F, in exchange for a payment to Individual F of approximately $2,000 per month beginning in early 2012. By using the charity's account to sell his items through the eBay charity store, Davachi saved thousands of dollars per month in various fees that he would have otherwise had to pay eBay. During this time, the Project Contact Africa eBay/PayPal account took in approximately $12 million in revenue, and eBay/PayPal sustained losses of approximately $908,231 due to the waived fees.

Customers of the Project Contact Africa eBay charity store were under the impression that "100 percent" of the proceeds of sales were intended to go to the charity when, in fact, Davachi and Individual F agreed that only a portion of the proceeds would go to the charity; the remainder would go to Davachi and Rez Candles Inc., which, in turn, would use these proceeds to purchase new inventory. Davachi and Individual F intended to repeat this cycle for their benefit. Davachi also admitted that he allowed numerous other individuals, including Ross, to use the Project Contact Africa eBay/PayPal charity store to sell their own items at a significantly reduced amount as compared to other for-profit sales methods on eBay, with the understanding that Ross and others, would pay back to Davachi a portion of their savings.

### Las Vegas: *USA v. Annamalai*

Annamalai pleaded guilty on July 29, 2015, to his role in the software piracy conspiracy. Annamalai is the owner and operator of Vegascart LLC. Annamalai admitted that he purchased approximately 2,569 Microsoft software product key codes from Ross between March and December 2013. These software key codes are calculated at a loss amount of $250 each, therefore, the relevant loss amount in this matter is estimated at $642,250.

### Seattle: *USA v. Schwartz*

Jake Schwartz, 28, of Seattle, owner of JHS Enterprises Inc., pleaded guilty on Oct. 27, 2015, to misprision of a felony. Schwartz admitted that he knew about Yang's involvement in the conspiracy and helped to conceal it. After Digisoft was sued for willful copyright and trademark infringement by Adobe Systems, Schwartz agreed to form Soft Deals LLC, a new corporation, with Yang.

\* \* \*

Assistant U.S. Attorney Patrick D. Daly of the Western District of Missouri is prosecuting these cases and Assistant U.S. Attorney Curt Bohling of the Western District of Missouri is responsible for the civil proceedings. ICE-HSI investigated the cases.

---

**Topic(s):**
Cyber Crime
Intellectual Property

**Component(s):**
USAO - Missouri, Western

*Updated August 23, 2016*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 5

27

The email evidence will show that on or about June 16, 2015 and **prior to** Greenway Nutrients® **initial federal civil case being dismissed** against Mr. Selakovic, that Greenway Nutrients® President Gustavo Escamilla informed law enforcement officials with the United States Department of Homeland Security (DHS) that Greenway Nutrients® federal civil case against Mr. Selakovic, as well as Mr. Selakovic' related business entities,  was in jeopardy of being dismissed, that **Greenway Nutrients® President Gustavo Escamilla was left financially devastated and homeless as a result**, and that Greenway Nutrients® **could not afford to pay private legal counsel at that time to represent the company in a federal court of law.**

---

**From:** Gustavo Escamilla
**Sent:** Tuesday, June 16, 2015 10:55:57 PM
**To:** Carlos Suarez
**Subject:** Greenway Update

Dear Carlos,

I hope that you are doing well sir. I thought that you should know that as of June 22, 2015, our Greenway Nutrients Colorado civil court case against Mr. Selakovic, Mr. Blackburn and their company Vegalab LLC., will most likely be dismissed because we are financially devastated and we can no longer afford to pay for any civil attorney to represent Greenway in our Colorado federal court case.

It appears, for the time being, as if Mr. Selakovic and Blackburn have been able to accomplish all that they have set out to do as it relates to stealing our products and devastating my company Greenway Nutrients, and pretty much my entire my family life. One of the saddest parts about all of this is that our very own attorney, Mr. Tom Ryan, who we considered one of our very closest friends at the time, a confident, who lived in our home free of charge and ate at our dinner table, actually had a direct role in doing all of this to us. Despite being properly reported to the Florida Bar, our former attorney, Mr. Tom Ryan is still able to practice law.

While I know that this has nothing to do with anything, attached you will find a couple of things that I thought you should have for your evidence file.

1. Is a 3 day eviction notice for our warehouse, which also happens to be where I am presently living, when I am not sleeping in my truck.

2. Is a 3 day eviction notice for my sons apartment in Boulder Colorado. That hurts on more levels than you could ever possibly know.

While Mr. Selakovic gets to pay Adobe and other companies back with their own monies that he has been able to steal, regular people like ourselves are forced to live in poverty without knowing where our next meal or paycheck is going to come from.

It is unfrotunate that Mr. Selakovic and Mr.Blackburn think that this is all one big game. Both Mr. Selakovic and Mr. Blackburn have repeatedly shown that they all absolutely no remorse or care for the many lives that they financially ruin and or for the many innocent people that they hurt with all of their the calculated, callous, maliscious and hurtful actions.

We thought that you should see this sir and we want you to know that we truly and sincerely appreciate all of your entire team' exceptionally hard work and efforts.

Thank you,

Gus

Email evidence on or about June 17, 2015 from The United Department of Homeland Security (DHS) reassuring Greenway Nutrients® President Gustavo Escamilla that everything was going to be alright and that DHS is working diligently to working each and everyday to ensure that we had our day in court and that DHS was very busy gathering additional vital evidence and information against all of the accused suspects in order to the make Greenway Nutrients® criminal complaint against Mr. Selakovic even bigger and stronger down the road.

**FW: Greenway Update**                                                        Wednesday, June 17, 2015 7:28 AM  ●  ☆

From: "Gibson  Shawn S" <Shawn.S.Gibson@ice.dhs.gov>

To: "Gustavo Escamilla" <gescamilla@ymail.com>

Cc: "Suarez  Carlos" <Carlos.Suarez@ice.dhs.gov>

                                                                    Full Headers Printable View

Mr. Escamilla,

I am truly sorry for the strain that has been placed on you and your family. I can't claim to understand the issues that you are facing on a daily basis, but know that we are working on ensuring that those that have violated Federal law will have their day in court to answer to allegations. Why I can't go into detail about our investigative objectives, know that we have been working on this case daily since our meeting and we are making progress. Having been in law enforcement for almost 2 decades I know that you are probably frustrated by the speed of the judicial process, but like we explained at the meeting it is going to take time. I know my words are of little solace considering you are facing eviction, but I assure you we are moving forward and your situation has not been forgotten. In the interim please seek out public assistance in any form you can to ensure that you and your family are taken care of. If you need any assistance in researching public assistance in your area let me know and we will assist in any way we can. Just know that the investigative steps we are taking today will help build a bigger and stronger case against those involved and we truly appreciate your assistance.

*Shawn Gibson | Group Supervisor*
*DHS – ICE | Homeland Security Investigations-Kansas City*
*4100 N. Mulberry Drive| Kansas City, Missouri 64116*
*(816) 802-8518 | (816) 584-1976 | 202-321-6453 cell*
*email-shawn.gibson@dhs.gov*
*Secure email-shawn.gibson@dhs.sgov.gov*
*Secure phone- 816-746-7861*

**UNCLASSIFIED // LAW ENFORCEMENT SENSITIVE //OFFICIAL USE ONLY**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 6

28

COMPLAINT

On or about August 3, 2015 Supervisory Field Agent Shawn Gibson informs Greenway Nutrients® President Gustavo Escamilla that these types of federal criminal counterfeit goods and copyright infringement investigations take time.

**RE: attn guss: regarding counterfit bottle of no spider mites**                    Monday, August 3, 2015 6:43 PM ●   ☆

| From: | "Gibson Shawn S" <Shawn.S.Gibson@ice.dhs.gov> |
| To: | "Gustavo Escamilla" <gescamilla@ymail.com>   "Suarez Carlos" <Carlos.Suarez@ice.dhs.gov> |

Full Headers Printable View

Mr. Escamilla,

While I understand your frustration and sympathize with your situation, we explained to you during our meeting that our investigation was not going to be quick. We have several avenues of this investigation and Blackburn and Slevakovic are just one of many. With that said we are moving forward and when the time is right we will conduct our enforcement activities. Regardless rights holders do not dictate when we execute enforcement activities.

While your information is helpful, these frustrated emails are not. They seem demanding and accusatory that we are not doing our jobs. I can ensure you we are, but we also want to put together a solid investigation and these types of cases require a lot of records which take time.
If you are not happy the law allows for you to seek resolution in U.S. civil court.

Thanks for your concerns and we will continue to work on our end to ensure that violations of the law are prosecuted.

---

**From:** Gustavo Escamilla
**Sent:** Monday, August 03, 2015 8:56:55 PM
**To:** Suarez, Carlos
**Cc:** shawn.gibson@dhs.gov
**Subject:** Fw: attn guss: regarding counterfit bottle of no spider mites

Dear Carlos,

Here is another client who called to complain me today stating that he believe he has purchased a counterfeit version of our No Spider Mites product from one of Mr. Blackburns and Mr. Selakovic' resellers.

So while I continue to sleep in my truck or wherever I can, and while my family and I can barely afford to survive and eat everyday sir, Mr. Selakovic and Mr. Blackburn get to RAKE IN and continue to STEAL TENS AND THOUSANDS of dollars from me and my family each and every week.

If I even so much as get a dang traffic ticket, guys like me go to jail all of the time.

As you know, this has been incredibly tough to have to watch and sit back and take. We created this product brand with our honest hard work and our own two hands while all of these guys get to continue to live the life of luxury, outspend us in federal court, while they all get travel the entire world with my families stolen monies acting as if they do not  have a care in the entire world.

These guys are selling my companies US trademark protected products for less than my wholesale accounts and stores can purchase them for.

This is crazy and incredibly unfair sir.

How are me, my company and my family supposed to continue survive?

Guys like me, who try and do the right thing and create business for themselves do not quailify for public assistance and even if I did, I should not be have to keep living like this and take it.

I hope that this message finds you well sir, and my sincere apologies if I appear incredibly frustrated, It is just that I do not have anyone else to turn to.

Thank you sir for all of your help,

Gus

---

--- On Mon, 8/3/15, billylynn46@cox.net <billylynn46@cox.net> wrote:

> From: billylynn46@cox.net <billylynn46@cox.net>
> Subject: attn guss: regarding counterfit bottle of no spider mites
> To: gescamilla@ymail.com
> Date: Monday, August 3, 2015, 3:16 PM
> This is Bill from RI. Great product
> let me know regarding this bottle. I attached pictures of
> the bottle and invoice.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 7

29

COMPLAINT

**Evidence - stolen Greenway Nutrients® product shipment**                Tuesday, October 4, 2016 2:11 PM

From: "Gustavo Escamilla" <gescamilla@ymail.com>

To: "shawn.gibson@dhs.gov" <shawn.gibson@dhs.gov>   "Carlos Suarez" <carlos.suarez@dhs.gov>

Raw Message  Printable View

6 Files   652KB   Download All

| JPG 102KB | JPG 119KB | JPG 117KB | JPG 106KB | JPG 100KB | JPG 108KB |

     

Save   Save   Save   Save   Save   Save

Dear Special Agents Gibson and Suarez,

I am hopeful that you are both doing well and are in good spirits. I received a phone call from a gentlemen named Glen who presented himself to me as the owner of Glen Mark Self-Storage which is located in Willits California.

http://www.glenmarkstorage.com/

Glen indicated that he, as well as his facility were in possession of 24 pallets of our US trademark protected No Spider Mites, as well as our No Powdery Mildew products. Glen also indicated that the renter of one of his storage units had received this illegal product shipment of Greenway Nutrients® products from Florida about 24 months ago.

Without me physically inspecting these goods, I can easily estimate the retail value of this stolen product shipment to be well in excess of $150,000.00. Sadly, Mr. Selakovic and Mr. Blackburn have literally stolen nearly everything from me and I do not even have anywhere near that much product left in my entire company.

I informed Glen that this property should be considered stolen and that I was going to report his information to the proper federal law enforcement authorities for further review.

As you can clearly see in the attached photos that I received from Glen , our product labels bearing our Greenway Nutrients® trademark (USPTO Serial Number 85142469) which is also affixed to all of our companies product labels is clearly visible in all of Glen's photos that I received today and that I am now forwarding to your agency.

Mr. Selakovic, as well as Mr. Blackburn have continued to knowingly illegally resell millions of dollars worth of Greenway' trademark protected products while continuing to cause untold financial ruin and emotional devastation to myself, my business, as well as my family.

Once again, I want you to know, trust, and understand that myself, as well as my entire family will never ever give up hope and we sincerely thank both you, as well as your entire team, for all of your ongoing efforts. I am also hopeful that this factual evidence will be of significant assistance in your agencies ongoing criminal investigation. I pray one day that your office will someday be able to successfully prosecute Mr. Selakovic and Mr. Blackburn who appear to have absolutely zero respect for any federal laws, and or any apparent fear from any type of federal criminal prosecution.

Thank you.

Sincerely,

Gus Escamilla
President
Greenway Nutrients®
135 East Olive Ave. #4103
Burbank, CA. 91503
(818) 355-0062 Direct


--- On Tue, 10/4/16, Glen Mark <glenmarkstorage@gmail.com> wrote:

> From: Glen Mark <glenmarkstorage@gmail.com>
> Subject: Re: Greenway Nutrients(R) Contact Information
> To: "Gustavo Escamilla" <gescamilla@ymail.com>
> Date: Tuesday, October 4, 2016, 12:57 PM
> Attached you will
> find photos of the items.









1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 8

30

COMPLAINT

**Ongoing and illegal Amazon.com sales of Greenway Nutrients® products**

Wednesday, October 12, 2016 2:55 PM

| From: | "Gustavo Escamilla" <gescamilla@ymail.com> | |
|---|---|---|
| To: | "shawn.gibson@dhs.gov" <shawn.gibson@dhs.gov> | "Carlos Suarez" <carlos.suarez@dhs.gov> |

Raw Message  Printable View

Dear Mr. Gibson and Suarez,

I hope that you are both in good spritis and going well. David Selakovic and Steve Blackburn are still illegally selling my companies US Trademark protected products via Amazon.com and Anthony Kornrumpf' company named Lookoutdeals.com.

Below is an advertisement of Lookoutdeals.com' ongoing and illegal sales of my companies products through Amazon.com.

https://www.amazon.com/gp/aw/d/B0068WCIMM/ref=mp_s_a_1_7?ie=UTF8&qid=1476308381&sr=8-7&pi=AC_SX236_SY340_QL65&keywords=Greenway+Nutrients&dpPl=1&dpID=413XunGT84L&ref=plSrch

Mr. Kornrumpf was also sued by Adobe Systems for the ongoing and illegal sales of Adobe Systems products as well.

http://cdn.ca9.uscourts.gov/datastore/memoranda/2014/06/02/12-16616.pdf

I thought that this information would be helpful as it pertains the statute of limitations.

It appears as if all of these gentlemen continue to have zero respect, and or fear of of the law , as well as from any type of federal law enforcement criminal action for all of their ongoing and highly illegal business conduct.

Thank you.

Sincerely,

Gus Escamilla
President
Greenway Nutrients®
135 East Olive Ave. #4103
Burbank, CA. 91503
(818) 355-0062 Direct

## <u>- Greenway Nutrients® Statute of Limitations Validation -</u>
## <u>- October 20, 2016 - Amazon.com online storefront screenshot -</u>

Mr. Anthony Kornrumpf and his online storefront Lookoutdeals.com, who acquire all of their Greenway Nutrients® Trademark protected products from David Selakovic,  Vegalab LLC., and Fulfillment Solutions LLC., despite being previously sued civilly for federal trademark infringement by Greenway Nutrients® in US federal court, as well as after having already received numerous CEASE AND DESIST requests for their continued unlawful sales conduct, are still knowingly violating Greenway Nutrients federally protected rights while continuing to unlawfully resell Greenway Nutrients® Trademark protected products online via Mr. Kornrumpf' Amazon.com online storefront.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 9

31

COMPLAINT

Email evidence by and between Greenway Nutrients® President Gustavo
Escamilla and Special Agent Shawn Gibson from DHS informing Mr.
Escamilla and Greenway that DHS could no longer investigate
Greenway Nutrients® federal criminal trademark infringement complaint
against Mr. Selakovic or any of Mr. Selakovic' related business entities until
Greenway Nutrients® federal trademark infringement dispute was properly
adjudicated through a federal court of law.

The evidence will show that AT NO TIME was there ever any adverse legal
decision(s) in favor of Mr. Selakovic or any of Mr. Selakovic' related
business entities regarding Greenway Nutrients® federal trademark in the
companies initial Colorado federal civil case against Mr. Selakovic.

The evidence will also show that DHS Agent Gibson who was in charge of
investigating Greenway Nutrients® federal criminal complaint received a
HUGE job promotion from his previous job title as a
Supervisory Field Agent operating out of Kansas City Missouri
to a much higher ranking position as
Operations Manager working directly out of Washington D.C.

On Oct 28, 2016, at 6:38 AM, Gibson, Shawn S <Shawn.S.Gibson@ice.dhs.gov>
wrote:

Mr. Escamilla,

We have researched your claims and consulted with the United States Attorney's
Office, Western District of Missouri and while we sympathize with your situation,
we have been advised that on August 17, 2015 a District Court found in favor of
Selakovic against Greenway Nutrients in regards to the assertion of the
Greenway trademark.  While we understand that you may disagree with this
judgement, our agency is bound by decision of the court and therefor are
restricted on what we can do in regards to your claims that they continue to sell
your products illegally.  My suggestion is to seek legal alternatives such as an
appeal of the decision and if you should receive an affirmative decision we can

revisit our involvement against the distribution of the Greenway products. Regardless, we continue to investigate the alleged criminal activities in regards to his alleged distribution of counterfeit software.  Please let me know if you have any questions.


Shawn Gibson l Operations Manager
DHS – ICE l Homeland Security Investigations-Domestic Operations
500 12th Street SW, 6th Floor MS-5106 (6161) l Washington D.C. 20536
> email-shawn.gibson@dhs.gov

<hr>

From: Gustavo Escamilla <gescamilla@ymail.com>
Subject: Re: Ongoing and illegal Amazon.com sales of Greenway Nutrients® products
To: "Shawn SGibson" <Shawn.S.Gibson@ice.dhs.gov>
Cc: "Carlos Suarez" <carlos.suarez@ice.dhs.gov>
Date: Friday, October 28, 2016, 11:55 AM

Mr. Gibson,

Thank you for the email sir. I sincerely appreciate that very much. While I respect our US Prosecutors legal opinions I will assert that I wholeheartedly disagree with their decision as it specifically  relates to Mr. Selakovic , or and any of Mr. Selakovic' related entities past, present, or ongoing violations of Greenway Nutrients® trademark infringement claims.

Let me first start off by stating that at no time,  as your prosecutor mistakenly asserts, did Chief Justice Marcia Krieger in Greenway Nutrients Colorado federal civil  case ever issue a ruling in favor of Mr.  Selakovic , or any of Mr. Selakovic' related business entities as it specifically relates to Greenway Nutrients® federal trademark infringement claims.

This is truly unbelievable and I can assure you that nothing could possibly ever be further from the truth and I am disappointed that a seasoned group of trained federal law enforcement professionals like yourself did not already know about all of these already proven facts and have been able to clearly see any of this.

Therefore, I am entitled to know the name of the US federal prosecutor who erroneously erred in interpreting the facts as it specifically relates to any legal decisions being made  on my own , as well as my companies behalf regarding Mr. Selakovic' ongoing unlawful sales , distribution, as well as flagrant ongoing violation(s) of my companies US federally registered trademark protected products.

Here are the facts. In my Colorado federal trademark infringement civil case against Mr. Selakovic, the Court notes that at the time my companies federal trademark infringement case was dismissed for the Plaintiffs failure to maintain a valid address or to obtain counsel, its claims for TRADEMARK INFRINGEMENT , FALSE DESIGNATION OF ORIGIN, and  UNJUST ENRICHMENT were STILL VIABLE!!

The publicly available court records that prove this point are attached in the link below.

https://www.pacermonitor.com/public/case/1534624/
Greenway_Nutrients,_Inc_v_Blackburn_et_al

At no time did the court ever rule in favor of Mr. Selakovic and or his related business entities regarding any trademark infringement allegations and for any seasoned federal prosecutor to not be able to clearly see this makes me feel as if I my own personal ,  as well as my company Greenway Nutrients® federal civil rights are being continuing to be violated under the "color of law", and that  I am being taken advantage because I am not currently represented by private counsel and due to the fact that I am of Mexican American decent.

As I had explained numerous times during your agencies investigation into Greenway Nutrients® federal criminal trademark infringement allegations against Mr. Selakovic and his related business entities , the one and only reason why Greenway Nutrients® federal civil lawsuit was dismissed was due to Mr. Selakovic' continued and ongoing harm and financial devastation that he and his associates have been able to continue to literally get away with caused myself, my family, as well as my company Greenway Nutrients® to lose everything and I was in dire financial straits and homeless as a result and I informed yourself as well as your agency of all of these facts.

Therefore, not fully understanding the federal judicial process at that time , myself, as well as my company Greenway Nutrients® were unable to afford to be

able to hire private counsel in order so that I may have been able to properly protect my companies federally registered trademark and rights.

Having said all that, and because I have grown increasingly frustrated and dismayed by our entire federal judicial system as a whole , has now caused me have to study the law in order so that I may be able to legally defend my own, as well as my companies basic fundamental civil rights and due process are properly protected.

In doing so, and because I federal law enforcement authorities left me homeless and allowed Mr. Selakovic and his related business entities to continue to cause grave financial harm while literally driving my business into the ground even further,  I am not able to afford federal civil rights attorney at this present time, therefore I have researched how I am able to file a federal civil rights case against FBI Agent Kenneth Mcguire with the Los Angeles field office of the United States Federal Bureau of Investigation "PERSONALLY" in Pauperis and on my own.

Most federal law enforcement officers and prosecutors are under the terribly misguided impression that they are all somehow COMPLETELY IMMUNE from any PERSONAL financial liability from any of the legal, personal, as well as financial devastation that their individual conduct causes hardworking citizens of this great nation like myself.

It is as if federal law enforcement authorities also appear to also be under the assumption that regular everyday citizens like myself, who continue to be financially devastated and harmed by known criminal  gangs like Mr. Selakovic', will just simply continue to take your word for it while allowing this type of rampant lawlessness that Mr. Selakovic continues be able to get away and cause to continue be able to take place.

Therefore, it is important that I take the proper time to advise your agency of the law as so that I do my job in properly advising yourself, as well as your agency of my own precedent setting "personal" federal civil rights civil complaint that I will be initiating against FBI Agent Kenneth McGuire "PERSONALLY" from then Los Angeles Field office of the United States Federal Bureau of Investigation and filing here shortly and I am well within my rights and am willing to initiate these same claims against any other federal law enforcement official who does the same.

The "QUALIFIED IMMUNITY DOCTRINE" protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether an official is entitled to qualified immunity, we (1) identify the specific right allegedly violated; (2) determine whether the right was "clearly established;" and (3) determine whether a reasonable officer could have believed that his or her conduct was lawful. Alexander v. City and County of San Francisco, 29 F.3d 1355, 1363-64 (9th Cir. 1994).

Courts apply the test articulated by the Supreme Court in Anderson v. Creighton, 483 U.S. 635 (1987), to determine whether the right is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 639-40. It is not necessary that the specific action in question previously have been declared unconstitutional, so long as the unlawfulness was apparent in light of preexisting law. Id. at 640. We consider whether "the particular facts of [the] case support a claim of clearly established right." Backlund v. Barnhart, 778 F.2d 1386, 1389 (9th Cir. 1985).

Even where a constitutional violation has occurred, an officer will be immune from suit if he or she "could have reasonably believed that his particular conduct was lawful." Romero, 931 F.2d at 627.

There is absolutely no conceivable way that any duly trained and qualified FBI field agent, or Department of Justice prosecutor could have reasonably believed that any, part, or all of the accused suspects past, present , and ongoing blatant disregard for our US Anti-Money Laundering, federal criminal trademark, as well as federal criminal copyright infringement statutes, could ever possibly be deemed to be considered nothing but unlawful business conduct. (Adobe Systems vs. Bea's Hive LLC, David Selakovic)

In closing Mr. Gibson, it is vitally important that you know that I respect your own, as well as all of your entire teams diligent hard work very much, so I am respectfully requesting that you please do not interpret any of my own, as well as my company urgent request for reconsideration for anything other than what they truly are and that is a request for some much needed federal law enforcement protection.

I am respectfully requesting a written response from yourself within seven (7) calendar days from today as it specifically relates to your agencies position on

my companies criminal trademark infringement allegations and case going forward. I can then decide what parties I am going to name in my own, as well as Greenway Nutrients® federal civil rights complaint that I will most certainly be initiating in coming weeks.

Please do not underestimate me and know that I will never go away because I am going to continue to peacefully navigate my way through this entire legal nightmare until justice is finally served.

I peacefully and respectfully await your diligent and well deserved reply.

Thank you.

Yours truly,

Gus Escamilla
President
Greenway Nutrients®
135 East Olive Ave. #4103
Burbank, CA. 91503
(818) 355-0062 Direct

The evidence will show that Greenway Nutrients® President Gustavo Escamilla had to email DHS Agent Gibson a second time seeking clarification as to precisely why DHS chose to no longer investigate Greenway Nutrients® criminal complaint against Mr. Selakovic and that Mr. Escamilla, in conjunction with Greenway Nutrients® also felt that their respective federal civil rights of due process of law were being violated.

-----Original Message-----
From: Gustavo Escamilla [mailto:gescamilla@ymail.com]
Sent: Monday, November 21, 2016 12:26 PM
To: shawn.gibson@dhs.gov
Cc: Carlos Suarez
Subject: Re: Ongoing and illegal Amazon.com sales of Greenway Nutrients®
products

Dear Mr. Gibson,

On October 28, 2016 you were kind enough to have emailed to inform me, as
well as the company that I founded, Greenway Nutrients® were no longer going
to have our criminal Trademark Infringement allegations investigated any further
by your agency based on the following grounds: "***we have been advised that on
August 17, 2015, a District Court found in favor of Selakovic against
Greenway Nutrients in regards to the assertion of the Greenway
trademark***."

That very same day, and copied below, I requested that you take the proper time
to provide me with the actual name of the US Federal Prosecutor who made this
erroneous legal decision on our behalf.

I also personally took the time to provide yourself, as well as the United States
Department of Homeland Security with factual evidence to the contrary and that
no such decision was ever reached in any district court regarding the validity of
Greenway Nutrients® criminal trademark infringement complaint against Mr.
Selakovic, as well as other known operators within Mr. Selakovic' criminal
organization that was filed with your agency on or about March 3, 2015.

Furthermore, at no time did either yourself, or any other federal law enforcement
official within the United States Departement of Homeland Security, or the United
States Prosecutors office ever once provide me, or my company, with any actual
federal court docket information as to exactly what district court or legal decision
that your federal prosecutor was able to view that allowed them to arrive at their
erroneous legal conclusions in order so that I, or Greenway Nutrients®, may
have been able to properly address, defend ourselves against, or dispute any of
your US Prosecutors erroneous legal conclusions.

Your failure to respond has gone onto further deprive myself, as well as Greenway Nutrients® with any actual due process of federal law, as well as our legally entitled federal trademark protected property while continuing to violate my own, as well as my companies most basic fundamental civil rights afforded to us under the fourth and fourteenth amendments.

At this time, I once again, respectfully requesting that you provide me with the following information in order so that I may able to put a stop to the ongoing unlawful sales and theft of millions of dollars worth of Greenway Nutrients® trademark-protected property that is still, in fact, being committed against myself, as well as my company, Greenway Nutrients®.

1. I am legally entitled to know what specific federal district court decision was viewed by your US federal prosecutor that actually showed that a legal decision had ruled been reached or made in favor of Mr. Selakovic, or any of Mr. Selakovic' related business entities.

Failure to provide me or Greenway Nutrients is an ongoing and direct violation of our most basic fundamental constitutional rights of  due process of the law , as well as our "life, liberty, and property" under the fourth and fourteenth amendments

2. Myself, as well as Greenway Nutrients® are in fact going to also want to acquire your copies of the actual audio recording that your agency is required to still have on in regards to our meeting that took place on or about March, 3 2015 in Burbank California in order to substantiate my own, as well as greenway' claims that our most basic fundamental rights and due process of the law are continuing to be violated under the "color of law", as well as the fourth and fourteenth amendments .

Our own individual copies of our own iPhone audio recordings that we also decided to take during our face to face meeting that took place in Burbank on or about March 3, 2015, are still fully intact at this time,  however, in order to further substantiate our own individual claims, we are also respectfully requesting that the United States Department of Homeland Security also preserve copies of their audio recordings of our face to face meeting that took place on or about March 3, 2016, in Burbank California as well.

You may want to re-familiarize yourself with your agencies copies of our face to face meeting audio recording because you will find that the reason why we would

like to have your agency preserve your copies of our face to face meeting audio recordings are due to the following reasons:

a.) Liza Haworth and I were informed at that meeting that the United States Department of Homeland Security was already eighteen months (18) into your agencies investigation into Mr. Selakovic' ongoing criminal trademark and copyright infringement operations and that federally sealed indictments against Mr. Selakovic, Mr. Blackburn, and their related co-conspirators had already been filed and were already in place against all of the accused suspects.

b.)  Liza Haworth and were also told at that meeting that took we would no longer have to worry because we were never going to need to pay for, or hire another private attorney ever again because the US Federal Prosecutor working out of Kansas City has agreed to criminally prosecute Greenway Nutrients criminal trademark infringement case against Mr. Selakovic, Mr. Blackburn, and their related co-conspirators.

c.) Liza Haworth were both informed by agent(s) Shawn S. Gibson and Carlos Suarez on numerous occasions that US Department of Homeland Security' investigation into Mr. Selakovic' ongoing unlawful sales and theft of Greenway Nutrients trademark-protected products were going perfectly fine and that arrests of Mr. Selakovic, Mr. Blackburn, and their related co-conspirators were right around the corner and imminent.

d. Your agencies audio recording of that face to face meeting that took place on or about March 3. 2015, will show that Liza and I were also told that your agencies investigation , as well as your agencies arrests or Mr. Selakovic and Mr. Blackburn, should be concluding themselves on or about September - December of 2015.

I must apologize to you personally sir, however , we honestly feel misled, deceived, as well as lied to by the US Department of Homeland Security who attempted to casually  "slow walk", "whitewash', as well as attempt to "casually dismiss" our entire criminal trademark infringement criminal complaint that was properly filed against Mr. Selakovic, Mr. Blackburn, and their related co-conspirators on or about March 3, 2015.

Unfortunately, at this time, we must assert that it certainly appears that the United States Department of Homeland Security is attempting to take advantage of me and my company by assuming that myself or my company would not be able to

understand your federal prosecutor's assertion regarding any federal district court ruling(s), and or legal decision(s) surrounding any of Greenway Nutrients® federal civil trademark infringement claims that were properly filed in Colorado Federal District court that ruled in favor of Mr. Selakovic. or any of Mr. Selakovic' related business entities.

Regretfully, we must admit that we feel that this is a further attempt to take advantage of a Mexican American small businessman because of the fact that myself, or Greenway Nutrients® are not currently represented by private counsel.

At no time, was I personally, or was Greenway Nutrients® ever properly advised any other federal civil court decision(s) that had ever ruled in favor of Mr. Selakovic, Mr. Blackburn, or any of their related co-conspirators for any of their ongoing unlawful sales of Greenway Nutrients® trademark protected products , as well as the ongoing and significant violations of Greenway Nutrients federally, protected trademark infringement rights.

Especially a full fourteen (14) months after the supposed unnamed federal district court decision that had supposedly taken place and that had supposedly ruled in favor of Mr. Selakovic , or any of Mr. Selakovic' related business entities as your prosecutor mistakenly asserts.

It is important that I advise yourself, as well as your agency of my companies intention, preparation, as well as efforts to make each and every single member of our nation's House Judiciary and Oversight Committee, as well as Office of the Inspector General, who both have direct oversight over your entire agency are completely made aware of the fact that known criminal organizations such as Mr. Selakovic' appear to be able to continue to be able to acquire special preferential political treatment simply because of Mr. Selakovic' deep seeded political ties and due to Mr. Selakovic', as well as Mr. Selakovic' criminal cohorts sizeable political donations that have in fact been made to a certain political Foundation who's massive and ongoing "Pay for Play" operations are finally garnering the public awareness and ongoing congressional oversight scrutiny that are all now being publicly disclosed and now coming to light.

With all due respect sir, I am also going to make it my number one priority to make each and every single member of President-elect Donald Trumps' transition team completely aware of all Mr. Selakovic' ongoing theft of billions of dollars worth of other companies valuable trademark protected products as well.

Ironically, and while it may have nothing to do with your agencies ongoing criminal investigation into all of Mr. Selakovic' ongoing theft of billions of dollars worth of other US companies trademark protected products, I will have you know that the Federal Bureau of Investigation has in fact known all about Mr. Selakovic ongoing counterfeit products and HSBC money laundering schemes for over twenty years (20) and all throughout the Clinton, Bush, and Obama administrations.

https://www.pacermonitor.com/case/5279680/
Adobe_Systems_Incorporated_v_Beas_Hive_LLC

On March 21, 2016 David Dragan Selakovic admitted to knowingly selling over SEVEN HUNDRED MILLION DOLLARS ($700,000,000.00) worth of counterfeit, fake, or unauthorized versions of Adobe Systems US trademark protected products.

David Selakovic also admitted to knowingly diverting, and or laundering over FIFTY MILLION DOLLARS ($50,000,000.00) in illicit, ill-gotten, and untaxed US profits in, as well as out of the United States, utilizing various HSBC Bank accounts and well after HSBC' late 2012 settlement that HSBC had previously reached with the US Department of Justice.

David Selakovic is also said to have recently reached a personal confidential settlement agreement with Adobe Systems in order to settle Adobe civil claims against Mr. Selakovic personally that is estimated to be between fifty and one hundred million dollars. ($50,000,000.00 - $100,000,000.00)

To make matter even worse , the United States Federal Bureau of Investigation has in fact known all about Mr. Selakovic' ongoing massive international software, as well as HSBC Bank' narcotics trade-based money laundering schemes since at least 2000 when the FBI was able to raid one of Mr. Selakovic' warehouse facilities in Pflugerville, Texas.

http://www.deseretnews.com/article/749576/Microsoft-
software-suit-names-SL-firm.html?pg=all

According to the above-published news reports, FBI agents who took part in raiding Mr. Selakovic' warehouse facility for his corporate front named Bantech at

the time, discovered thousands of counterfeit, fake, or unauthorized versions of Microsoft Software products in Bantech's possession.

Yet, because of Mr. Selakovic' "political connections" , as well as due to the fact that Mr. Selakovic has supplied the Mexican "Sinaloa drug cartel" with most. if not all of their counterfeit Microsoft, as well as Adobe Systems software product for decades, no criminal investigation was ever properly performed by the FBI and Mr. Selakovic, much like today, was never even questioned and has never once had to answer to any federal law enforcement official regarding any of Mr. Selakovic' ongoing multi-billion dollar international counterfeit software manufacturing and distribution schemes.

Ironically, FBI Director James Comey still sits on HSBC Board of directors and US Attorney General Loretta Lynch represented the Government during HSBC Bank' 2012 settlement agreement that HSBC bank reached with the United States Department of Justice.

"Director Comey a board member of HSBC Bank"

http://investmentwatchblog.com/fbi-director-comey-is-a-board-member-of-clinton-foundation-connected-bank-hsbc/

Once again, Mr. Gibson, it is vitally important that you know that I sincerely respect your own, as well as all of your entire teams diligent hard work very much, so I am respectfully requesting that you please do not interpret any of my own, as well as my company request for reconsideration for anything other than what they truly are and that is a request for some much needed federal law enforcement protection.

I peacefully and respectfully await your reply.

Gus Escamilla
President
Greenway Nutrients®
135 East Olive Ave. #4103
Burbank, CA. 91503
(818) 355-0062 Direct

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 10

32

COMPLAINT

On Mon, 11/21/16, Gibson, Shawn S <Shawn.S.Gibson@ice.dhs.gov> wrote:

From: Gibson, Shawn S <Shawn.S.Gibson@ice.dhs.gov>
Subject: RE: Ongoing and illegal Amazon.com sales of Greenway Nutrients® products
To: "Gustavo Escamilla" <gescamilla@ymail.com>, "shawn.gibson@dhs.gov" <shawn.gibson@dhs.gov>
Cc: "Carlos Suarez" <carlos.suarez@dhs.gov>
Date: Monday, November 21, 2016, 10:24 AM

Why I understand your frustration and concerns, our agency cannot move forward with any investigation involving your trademark until you resolved this issue with the District Court in Colorado that issued the decision.  I take offense to the insinuation that I am avoiding your email to deprive your rights.   I have never once avoided your emails or questions, in fact because you are emailing from a ymail account they often go into a junk or quarantine box, which I find and then respond to.  In this circumstance I have been not only been on official travel in regards to this investigation, but also had more pressing matters to take care of which hasn't afforded me the time to check those folders.

You assert allegations against this department, as well as myself and my staff, that we have ignored you and proactively tried to take advantage of you, which couldn't be further from the truth.  We have, and continue too, since the day we met with you to seek charges against Selakovic in Singapore for his alleged sale of illicit software.   Additionally, we have made attempts to look into the alleged misuse of the Greenway Nutrients logo, but because of the court decision, in a case you were a party to in Colorado, would not be able to file charges at this time.  Attached is a selection of the case history from the court case showing a decision in favor of Selakovic, which as I advised in my prior email you should be able to seek an appeal if you disagree with the decision.  Contact the court and get an in depth copy of the decision, which as you can see they tried to send you but was returned undeliverable just over a year ago.  We would be happy to take a second look if that decision is reversed.

If you feel that you have been wronged and feel these are just allegations against the department, my staff or myself, please seek any remedies afforded to you based on your rights.

500 12th Street SW, 6th Floor MS-5106 (6161) l Washington D.C. 20536
email-shawn.gibson@dhs.gov

     With honor and integrity, we will safeguard the American people, our homeland, and our values.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 11

33

COMPLAINT

**RE: DHS Civil Rights Violations - 18 U.S. Code § 242 - Deprivation of rights under color of law**

Tuesday, May 2, 2017 7:07 AM ●  ☆

| From: | "CRCL" <CRCL@HQ.DHS.GOV> |
| To: | "gescamilla@ymail.com" <gescamilla@ymail.com> |
| Cc: | "CRCL" <CRCL@HQ.DHS.GOV> |

Raw Message  Printable View

Thank you for contacting the U.S. Department of Homeland Security's (DHS) Office for Civil Rights and Civil Liberties (CRCL).  Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, CRCL is responsible for reviewing and assessing information concerning abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion, by employees and officials of DHS.

After reviewing your information, we have determined that CRCL does not have jurisdiction over your concerns.  Thank you again for contacting the Office for Civil Rights and Civil Liberties.

Sincerely,

Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 12

34

COMPLAINT

August 11, 2017

U.S. Immigration and Customs Enforcement

Office of Professional Responsibility

Attention: Mr. Russell Simons - Resident Agent In Charge - Los Angeles 1 & 2

501 West Ocean Blvd. Suite 1600

Long Beach, CA. 90802

Phone: 562-980-3170

Via US Express Mail

Re: Greenway Nutrients® federal law enforcement misconduct complaint

Dear Mr. Simons,

My name is Gustavo Escamilla and I am the President of Greenway Nutrients. Greenway is a manufacturer, formulator, and distributor of organic plant-based fungicides and pesticides, and holds a registered trademark for "Greenway Nutrients" located in your designated law enforcement coverage area and in Burbank California.

I would like to apologize if I appeared to be incredibly hurt, disappointed, and upset during our last phone call that took place at approximately 10:46 AM PST on August 4, 2017.

After reviewing my own as well as my companies plight a little further I am very hopeful that you may be able to sympathize with our incredibly unfair situation which has been very hard for us to have to repeatedly comprehend, digest, or witness firsthand.

In order to refresh your memory, on or about July 27, 2017, I took the time to properly phone your office and make contact with the current acting United States Department of Homeland Security' Office of

Professional Responsibility Resident Agent In Charge as prescribed by DHS reporting protocols in order to file a formal misconduct complaint against several DHS federal law enforcement officers who I feel have repeatedly and intentionally violated my own as well as my companies most basic fundamental civil rights as outlined in the United States Constitution and the Bill of Rights.

These rights include each US citizens rights of the use and enjoyment of their "life, liberty, and property" as well as actual due process of federal law as outlined in the fifth and fourteenth amendments of our United States Constitution and Bill of Rights accordingly.

During our first call that took place on or about July 27, 2017, you were kind enough to inform me that you would look into our situation a little further and that you would be immediately forwarding my information regarding my own, as well as my companies allegations of the ongoing theft of millions of dollars worth my companies valuable brand name trademark protected products and the outright hijacking of my entire company by Greenway' former attorney named Michael J. Ryan (Ryan) as well as a gentlemen by the name of David Dragan Selakovic (Selakovic) via email to the Supervisor in Charge named Greg Mack with DHS' Los Angeles field Office of Intellectual Property Investigations.

Mr. Selakovic also happens to be the actual mastermind and ringleader behind "Operation Software Slashers" which also happens to be DHS' single largest software piracy investigation that has ever been successfully prosecuted by the United States Department of Justice (DOJ).
We also discussed that is a very well known fact that Mr. Selakovic has a very longstanding history of being repeatedly accused of being the mastermind behind an international counterfeit goods scheme that is directly responsible for the ongoing and unlawful manufacturing, distribution and sales of billions of dollars worth of counterfeit, fake, or unauthorized versions of Adobe Systems as well as the Microsoft Corporations name brand software products as well and just to name a few.

During our initial call, you were also kind enough to provide me with DHS' main unlisted phone line number which is 562-624-3800.

You also informed me that if I did not hear back from Mr. Mack or anyone from DHS by August 4, 2017, that I should give you a call so you may be able to follow up on our behalf.

Then on or about August 3, 2017, and after not hearing from anyone from DHS regarding my own as well as my companies allegations any further, I then followed your instructions and later phoned you back and left a message to inform you that I had initially misplaced DHS' main unlisted phone number that you had

previously provided me with and that I had not heard anything back from any federal law enforcement official within DHS.

Later that same day, on or about August 3, 2017, you returned my phone call at approximately 3:00 PM PST and we spoke for over an hour on the phone.

During that phone call you then informed me that you had looked into my own as well as my companies criminal allegations against Greenway' former attorney Mr. Ryan and suspect Selakovic' conduct a little further and that you were acquainted with and knew Supervisory Agent in Charge of Greenway' criminal investigation named Shawn Gibson (Gibson) personally because Mr. Gibson had also previously worked for DHS in the Los Angeles area as well.

You then informed me that you and Mr. Gibson had spoken over the phone and that Mr. Gibson had informed you that on or about August 17, 2016, Greenway had received a federal court ruling and legal decision in favor of Mr. Selakovic and against Greenway as it relates to Greenway' trademark in Greenway' initial Colorado civil court case.

I then informed you that no such court ruling or legal decision had ever been reached in favor of Mr. Selakovic and against Greenway as it relates to Greenway' trademark in Greenway' initial Colorado civil court case.

While you and I were on the phone I directed your attention to Greenway' Colorado civil court docket that is readily available online.

You and I then took the time to properly review and go through Greenway' Colorado federal civil case court docket that was located on the website address located at www.Pacermonitor.com.

Below is the Pacermonitor' website link that you and I took the time to properly review together.

https://www.pacermonitor.com/case/1534624/Greenway_Nutrients,_Inc_v_Blackburn_et_al

You and I then read through Greenway' last federal court ruling and legal decision in Greenway' Colorado civil court case together that was located on Pacermonitor.com' website which clearly states the following.

"Having reviewed the Defendants motion and the record, the Court finds that the Defendants have failed to establish that this is an exceptional case under the Lanham Act or that it lacked substantial justification

under § 13-17-102. The Court notes that at the time the case was dismissed for the Plaintiffs failure to maintain a valid address or to obtain counsel, its claims for trademark infringement, false designation of origin, and unjust enrichment were still viable. These claims were not adjudicated on the merits and the Court, therefore, cannot find that the suit was unfounded or groundless."

I then explained to you that I, as well Greenway have repeatedly requested further clarification and actual explanation from Mr. Gibson as to what specific Colorado civil court case document or ruling that he (Mr. Gisbon), was referring to in order so that Greenway would be able to lawfully defend its lawful rights to its own property as well as due process of federal law.

Since then, other than sending a printout of Greenway Colorado civil court case docket which explains nothing, Mr. Gibson has repeatedly refused to provide me, or Greenway with any type of explanation or documentation whatsoever as to what actual ruling and or court decision that he is speaking of that would have allowed Greenway the ability to proceed forward and lawfully defend its rights.

After you and I the took the time to review Greenway' federal court docket together, you also agreed with me while coming to the same immediate conclusion that no such August 17, 2016, federal court ruling had ever occurred or taken place ruling in favor of Mr. Selakovic and against Greenway as it relates to Greenway' trademark, and you then stated to me the following,

"I am going to have to talk to Shawn about this and get back to you."

I then thanked you for all of your valuable time and consideration and we concluded our call.

The very next day, on August 4, 2017, at approximately 10:30 AM PST you were kind enough to get back to me stating that you had spoken to Mr. Gibson once again and that Mr. Gibson stated that Greenway would need to return back to federal civil court in order to be able to receive a favorable court ruling or legal decision as it relates to Greenway' ownership of its mark against Mr. Selakovic before DHS would be able to consider investigating or prosecuting my own, as well as Greenway' criminal complaint any further.

I voiced my displeasure with yours, as well as Mr. Gibson' joint legal conclusions and I then asked you what federal specific August 17, 2016, document or federal court ruling are you or Mr. Gibson were referring to as it relates to any adverse legal decision as it specifically relates to Greenway' actual ownership of its valid US federal trademark.

You then explained the following to me.

After your own as well as Mr. Gibson' review of Greenway' federal civil court docket and complaint, that while there may not have ever been any actual adverse legal decision ruling against Greenway' trademark, there was no actual ruling or legal decision that ruled in favor of Greenway' trademark that clearly stated that Greenway owned the rights to its valid US trademark.

I personally could not believe what I was hearing and I further explained that Greenway had already taken the time to expend considerable resources in order to have already gone through the process of lawfully obtaining a valid US trademark and that was all that was lawfully required by law as proof of ownership of Greenway' trademark.

I also explained that there was absolutely no need for Greenway or I to have expend additional financial resources in order to be able to hire another federal civil attorney while having to go through all of the unnecessary costly expenses of having to return back to a federal civil court of law in order to prove that Greenway was the owner of a trademark that Greenway had already lawfully obtained from the United States Patent and Trademark Office.


You then stated to me something along the lines of the following,

"I don't know what to tell you, Mr. Escamilla, you are going to have to go back to federal court and acquire a legal decision in favor of Greenway and against Mr. Selakovic before DHS can proceed any further with its criminal investigation into your own as well as your companies criminal allegations."

I then explained that DHS story has now changed entirely.

Reason being, is that I also explained that I was in possession of an email that was sent to me personally and by Supervisory Field Agent Shawn Gibson on October 28, 2016, clearly stating that the one and only reason that DHS had initially rejected investigating or prosecuting Greenway' criminal allegations any further was due to a federal court ruling in favor of Mr. Selakovic and against Greenway as it relates to the assertions of Greenway' trademark and now Mr. Gibson and yourself were attempting to explain to me that no such email had ever occurred and that my conduct and claims were "ridiculous".

I then asked you how so?

You then explained to me that "the only reason that I was unhappy was due to the fact that I was not satisfied with the outcome of our criminal case."

I then stated that I could very easily forward you this email and requested that you provide me with your government issued email address in order so that Greenway would be able to provide you with actual evidence to the contrary.

You then responded by saying something along the lines of:

"No that's okay, I have already heard and seen all that I need to see and I have already spoken to Shawn (Gibson) and he (Gibson) has already told me everything that I needed to know about this case."

I expressed to you that was not at all fair and that I have new and damaging evidence that is critical to Greenway' case that should have immediately triggered a new inquiry as well as criminal investigation into Greenway' former attorneys'  and Mr. Selakovic' ongoing and unlawful theft of Greenway' products.

I then asked you what you were basing your invalid legal conclusions off of?

 You stated to me that "Greenway would need to go back to federal court to acquire a ruling against Mr. Selakovic and in favor of Greenway."

I stated that there was no such need for that to take place and that regardless of that previously reached erroneous legal conclusion that Mr. Gibson had emailed me on October 28, 2016, that I was in possession of compelling and very damaging new evidence and information that would have completely negated and all previously reached improper legal conclusions.

I then explained to you that on or about March 8, 2017, while updating Greenway' evidence and information I had just recently discovered that Greenway' former attorney who Greenway had also previously executed Greenway' non-disclosure non-circumvent agreement prior to performing any legal work on behalf of Greenway, and was instrumental in contractually obligating with the accused suspects, has now clearly breached his professional fiduciary responsibilities, and was improperly and unlawfully sharing, divulging, as well as disclosing Greenway' confidential trade secrets and business information with Mr. Selakovic.

To make matters even worse. I also explained that Greenway' former attorney was now also unlawfully representing Mr. Selakovic, as well as several of Mr. Selakovic' corporate entities which was clearly

detrimental to Greenway and that the accused suspect's conduct should be considered to be nothing more than outright fraud and theft on behalf of Greenway' former attorney as well as Mr. Selakovic.

I the also stated that I felt that Mr. Gibson was being dishonest and that I have evidence to the contrary and that I, as well as Greenway,  would like to file a formal misconduct complaint as prescribed by DHS very own federal law enforcement misconduct guidelines and reporting protocols and against Mr. Gibson with your office.

To our utter shock and amazement, you then stated the following,

"You can file anything you want because I am not going to do anything with it anyway."

I the could not believe what I was hearing so explained to you that I felt that my own, as well a Greenway' civil rights were in being violated pursuant to Title 18, U.S.C., Section 242 deprivation of rights under color of law, and further explained that I, as well as Greenway,  were being unlawfully subjected to an intentional infliction of severe emotional distress while also being unlawfully stripped and deprived of our "life, liberty, and property" as well as of any actual due process of federal law as prescribed under the fifth and fourteenth amendments of our United States Constitution and Bill of Rights and that your explanation to me as to why yourself, Mr. Gibson, or DHS is unwilling to look at, revisit, or even allow Greenway to admit any new evidence that is incredibly damaging and critical to Greenway' entire case was totally unfair and completely unacceptable.

I then asked for you to provide me with something in writing as so that Greenway or I may be able to properly understand your decision and position in order for Greenway to have been able to properly defend its lawfully entitled rights accordingly going forward.

You then refused to provide Greenway with anything in writing.

I expressed to you that I felt that was completely wrong and totally unfair on your part.

You then stated the following,

"If you don't like it, I would be more than happy to forward you to our FOIA request line"

I then stated that was not at all fair of you to make me or Greenway have to now also go  through the unnecessary process of having to file a another separate federal civil court action in order to be able to

acquire something in writing from you and that what you were attempting to explain to me made absolutely no sense whatsoever and that if you felt that your legal position was at all lawful or valid that you should be able to immediately provide Greenway with something in writing.

I also then questioned as to why DHS close to wait a full fourteen (14) months later and until October 28, 2016, to inform Greenway that DHS would no longer be able to pursue Greenway' criminal allegations any further based on a legal decision that never occurred on or about August 17, 2016.

You then once again refused to answer the question and stated the following,

"I don't know what to tell you, Mr. Escamilla, you can do whatever you want to do because you are just unhappy with the outcome of our criminal investigation and there is nothing more that I or DHS can do for you until you clear up your ownership of the Greenway' trademark".

I then concluded our call by thanking you for your time, and I also stated that I was okay with you not providing me or Greenway with anything in writing and apologized for the inconvenience.

In closing, I am once again respectfully requesting that you take the time to provide Greenway with something in writing as to your legal conclusion and investigation into Greenway criminal allegations and Mr. Gibson misconduct accordingly.

Thank you.

Respectfully submitted,

Gustavo Escamilla
President
Greenway Nutrients®
135 East Olive Avenue #4103
Burbank, CA. 91503
(818) 355-0062 Direct